**Leslie PYLES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19709.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 18, 1966.

Decided June 2, 1966.

Petition for Rehearing En Banc and for Rehearing Before the Division Denied August 5, 1966.

Edgerton, Senior Circuit Judge, dissented.

Mr. William J. Dempsey, Washington, D. C. (appointed by this court) for appellant.

Mr. David B. Wexler, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and John H. Treanor, Jr., Asst. U. S. Attys., were on the brief, for appellee. Mr. John C. Conliff, Jr., U. S. Atty. at the time the record was filed and Mr. John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before EDGERTON, Senior Circuit Judge, and BURGER and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

On this appeal from a jury conviction of robbery and assault with a dangerous weapon, the only error asserted is that the District Court should, as a matter of law, have held that a statement made by appellant to the arresting officer was involuntary. There is no claim of a procedural defect in this connection, as there could not be since the trial judge scrupulously observed the standards laid down by the Supreme Court for resolving the issue of voluntariness. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964); and see Hutcherson v. United States, 122 U.S.App.D.C. 51, 351 F.2d 748 (1965). The contention is, rather, that, on the testimony given out of the presence of the jury, the trial court was legally required to rule that the admission was involuntary. Our examination of the record does not suggest to us that the court was so circumscribed; and we affirm the conviction.

I

Only one witness testified at the voluntariness hearing outside the presence of the jury, and that was the arresting officer. He testified that he was on motorcycle patrol at 9 o'clock in the morning of December 23, 1964, when he received a radio report that a laundry in his vicinity had just been held up. This report included at least a partial description of the man who had committed the hold-up, and the officer went immediately to the scene of the crime. He kept on going in the direction that an onlooker told him the robber had fled. Shortly thereafter he encountered another man who said he had been chasing the robber. Just at that moment the officer caught a glimpse of a man running from an alley into a school yard. The officer rode his motorcycle into the school yard in pursuit. The man made it across the school yard before the officer could reach him, and went out through a gate on the other side and down some steps into the street. Since the officer could not ride his motorcycle through the gate and down the steps, he dismounted, drew his revolver, and shouted to the fleeing man to stop or he would shoot. The man—later identified as appellant—stopped and came back into the

school yard as ordered. At this point the officer's testimony was as follows:

Q. Did you then place this man under arrest?

A. I did.

Q. Now, did you have any conversation with him immediately after placing him under arrest?

A. I brought him back into the school yard, and upon searching him, I asked him what he committed the hold-up for, and he said: I needed the money. At this time I removed a .38 caliber snub-nosed revolver, fully loaded, from his right pants pocket; and in his left front pants pocket, he had some money and a pair of dark sun glasses, which I left in his pocket.

Q. Did you ask him about the hold-up before you removed the gun and the money or afterwards?

A. This was right after I took the gun out of his pocket.[1]

On cross-examination by appellant's counsel, the officer added that, after he finished the search, he ordered appellant to lie on the ground, which he did until a scout car arrived and one of the newly-arrived officers placed handcuffs on appellant. The cross-examination ended in this fashion:

Q. When was the so-called confession —when was that given, before the officers from the scout car—

A. Before, yes, sir.

Q. Before they arrived?

A. Yes, sir.

Q. Did he have the handcuffs on?

A. No, sir.

Q. Did you have the gun on him at the time he confessed?

A. I had the gun in my hand.

Q. Not on him but pointing toward him?

A. You might say it was toward him, yes, sir.

Q. I have no further questions.

THE COURT: Tell me again, what was the conversation you had with the man at the time?

THE WITNESS: The only conversation I had with the Defendant was, I asked him what did he hold the place up for; and he says: I needed the money. That was the extent of the conversation.

After the officer finished his testimony, this colloquy took place between court and defense counsel:

THE COURT: Do you want to offer any testimony on the subject of voluntariness or are you relying solely on the statement of the officer?

MR. GRAHAM: No, sir, the officer and the Defendant agree almost a hundred per cent on that.

THE COURT: Very well.

When the trial resumed in the presence of the jury, the officer told his story again, appellant testified as well, and the issue of voluntariness went to the jury on the standard voluntariness instructions which were requested in the first instance by the defense.

## II

It is urged upon us that the compromising statement made by appellant to the officer must be involuntary as a matter of law because the officer had his gun in his hand when it was made. It is perhaps possible that a person might be so given to nervousness in the presence of firearms, whichever way they happened to be pointing, as to be prone to uncontrollable verbalizing. Appellant, having

[1]. In his testimony before the jury, the officer said as follows:

A. When I removed the revolver from his right pants pocket, I asked him what did he hold that place up for; and he said: I need the money.

Q. Did you at that time continue to search him?

A. I did.

Q. And what if anything did that search reveal?

A. In his left pants pocket he had numerous amount of paper money, which I didn't count at that time; and I just stuck it back in his pocket and had him under arrest.

just been relieved by the officer of a fully-loaded .38 caliber revolver of his own, hardly strikes us as a person of such acute emotional vulnerability. Indeed, appellant argues that it was the particular attitude of the officer's gun, rather than the mere fact of its presence, which compels the conclusion that his statement was not, in legal contemplation, his own.

It is certainly possible to conceive of circumstances in which the use of a gun in a process of interrogation would have an intimidating effect of such force as to render the answers coerced. The question here, however, is whether the record of the voluntariness hearing in this case disclosed such circumstances. We think not. In the first place, this was not a sustained interrogation carried on in the privacy of the police station. One question was asked, and one answer promptly given, the whole being on an open school yard in broad daylight. The officer did not draw his gun for the purpose of his question. The gun had been drawn earlier as the only way of apprehending the fleeing suspect. The officer was alone with a suspect whose dangerousness was immediately confirmed by the discovery of the loaded gun on his person. Working with such a person at close range and without cover from another policeman, the arresting officer was not obliged to return his gun to its holster until his search was completed and his prisoner had been made fully secure, which latter did not happen until help came in the squad car and the prisoner was handcuffed by one of the newly-arrived policemen under the covering protection of the others.

There is nothing in these facts to suggest that appellant believed that, if he did not respond to the question as he did, he would promptly be shot in cold blood and in the open view of the world at large. The officer had not embarked upon a persistent interrogation obviously implying a firm purpose to get a confession. His was a remark which is not extraordinary under the strained and fast-moving events which characterized the apprehension of appellant. There is nothing to compel the conclusion that appellant's response to it was without evidentiary value because of the circumstances.

At least, when the trial court made its ruling, appellant had not so represented his state of mind. The defense declined the court's express invitation to proceed with evidence of its own. Appellant was wholly free at that time, out of the presence of the jury, to give the court his version of the incident and to describe its intimidating effect, if such it was, upon him.[2] This portion of the record closed without a scintilla of evidence on this point. There can, in our view, be really no question of our now saying that, on this evidence taken out of the jury's presence, the court erred as a matter of law in failing to find involuntariness.

Under the Jackson v. Denno procedure followed in this jurisdiction, the jury was given its independent opportunity to appraise the voluntariness issue. Appellant did testify before the jury. The defense

2. Although again it is possible to hypothesize facts from which a legal conclusion of involuntariness would be irresistible even without the prisoner's testimony, normally it would appear to be true that, as this court has said on one occasion: "To substantiate a defendant's contention that his confession was involuntary, it is generally necessary for him to take the stand." Wright v. United States, 102 U.S.App.D.C. 36, 45, 250 F.2d 4, 13 (1957). The United States Supreme Court has remarked that the testimony of the prisoner on involuntariness, given out of the jury's presence, "would be pertinent to the inquiry on admissibility and might be material and determinative" United States v. Carignan, 342 U.S. 36, 38, 72 S.Ct. 97, 99, 96 L.Ed. 48 (1951). And, in specifying the Jackson v. Denno requirements, the Supreme Court said in so many words that one of the moving considerations was to give the accused a chance to testify out of the presence of the jury, free of the deterrent of impeachment as to credibility, so that the determination of voluntariness would not have to be "made upon less than all of the relevant evidence. Cf. United States v. Carignan * * *." 378 U.S. at 389 n 16, 84 S.Ct. at 1787.

asked for, and got, proper instructions under which, if the jury believed appellant to have been coerced, it would have disregarded the admission. We find nothing in the record to indicate that that issue was not properly before it.

The judgment of conviction appealed from is

Affirmed.

BURGER, Circuit Judge (concurring):

I concur fully in Judge McGowan's opinion but in light of the dissent it may be useful to emphasize that split seconds before the officer asked his question, Appellant was not "unarmed" for he had a .38 caliber pistol. I suggest it is also a "frightening experience" calling for "considerably more fortitude than most of us have" to confront and disarm an armed robber who has just used his weapon to loot a store.

That Appellant was unarmed at the moment of the colloquy with the officer is hardly the point. The multiple trials and appeals in Coleman v. United States [1] demonstrate that an unarmed man is not necessarily cowed or subdued. There the unarmed robber fleeing police disarmed an officer, murdered him and gravely wounded his partner.

I find it difficult to accept the equation of police action in pointing a pistol at an armed robber and a robber pointing a pistol at his victim to steal a watch. I should think the former is what we pay policemen to do and the latter is what we imprison a robber for doing.

EDGERTON, Senior Circuit Judge (dissenting):

The government concedes that the appellant "was held at the point of the officer's gun all of the time." The officer had disarmed and searched him before the question was asked and answered.

"[T]he will is as much affected by fear as by force. * * * When a suspect speaks because he is overborne, it is immaterial whether he has been subjected to a physical or a mental ordeal." Watts v. State of Indiana, 338 U.S. 49, 52, 53, 69 S.Ct. 1347, 1349, 1350, 93 L.Ed. 1801 (1949). It is likewise immaterial whether he has been subjected legally or illegally. If what the officer did was legal it was nonetheless frightening, and what the appellant said in answer to the officer's question was therefore inadmissible, whether or not the officer himself was and had cause to be frightened, and whether or not his act was necessary in self-defense or to maintain the arrest. I do not see how it can be doubted that a policeman who holds a gun pointed at an unarmed prisoner subjects him to a frightening experience. In the prisoner's situation, I think it would take considerably more fortitude than most of us have to refuse to answer the policeman's question. But that my brethren think otherwise, I should have thought it clear beyond argument that the appellant's statement was involuntary as a matter of law and that the conviction must therefore be reversed.

We have said it is "generally" necessary for a defendant to take the stand to substantiate a contention that his confession was involuntary. Wright v. United States, 102 U.S.App.D.C. 36, 45, 250 F.2d 4, 13 (1957). But we said on the same page that if there is no evidence which could support a conclusion that a confession was voluntary, the court "must exclude the confession". This means, among other things, that in such a case it is not necessary for the defendant to take the stand. Since there is no evidence in the present record that the confession was voluntary, obviously there is no evi-

1. Coleman v. United States, 111 U.S.App. D.C. 210, 295 F.2d 555 (1961), cert. denied, 369 U.S. 813, 82 S.Ct. 689, 7 L. Ed.2d 613 (1962); Coleman v. United States, 118 U.S.App.D.C. 168, 334 F. 2d 558 (1964); Coleman v. United States, 123 U.S.App.D.C. 103, 357 F.2d 563 (1965).

dence which could support a conclusion that it was voluntary. It appears to me that a confession obtained at gun point can no more be found to have been given voluntarily than a watch obtained at gun point can be found to have been given voluntarily.

I would reverse.