THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WALLACE BAKER, Appellant.

First Department, June 22, 1967.

*Martin B. Rosner* of counsel (*Alfred I. Rosner* and *Marguerite S. Hines,* attorneys), for appellant.

*Alan F. Scribner* of counsel (*Michael Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

STEUER, J. Defendant Baker is one of six defendants tried and convicted together of murder in the first degree. The court is unanimous in affirming the convictions of the other five, and also unanimous that this defendant's guilt was estab-

lished beyond any reasonable doubt. The murder occurred in the attempted robbery of a clothing store conducted by an elderly refugee and his wife. The plan of the defendants was to murder these two inoffensive people first and then to loot the store. It succeeded only to the extent of killing the wife by stab wounds. The husband survived the wounds inflicted on him. The plan was amply proved by the evidence of a seventh participant in the scheme who was prevented from participating in the event itself. His testimony was corroborated by the evidence of eyewitnesses to the defendant's fleeing the scene and by other, circumstantial, evidence. No defense other than an invasion of constitutional rights was offered.

The point as to which difference of opinion arises concerns the confession given the police by the defendant. It appears that defendant's attorney, Mr. Sena, arranged to surrender defendant to the police. On their arrival at the station house, Mr. Sena told the police that he had informed defendant as to his rights and that he would have no statement to make. Nevertheless, the police did question defendant, but after each question Mr. Sena advised the defendant, and no answers were given. About two hours later, an Assistant District Attorney arrived at the station house. The same procedure followed briefly. Then the Assistant District Attorney informed Mr. Sena that defendant would be booked and later arraigned that afternoon. Mr. Sena thereupon left the precinct station house. Various detectives thereafter addressed questions to defendant to which he refused to reply.

In the early afternoon a Detective Nicastri went in the room with Baker. Baker looked out of the window and saw a large number of people in the street in front of the station house. He asked Nicastri why they were there. Nicastri told him they were waiting to see him come out of the station house. Nicastri then asked him whether there was anything he would like "to get off his chest." Defendant then made a brief statement, which the detective took down, but the defendant refused to sign. Thereupon the Assistant District Attorney questioned him. The defendant answered certain questions and refused to answer others. It is this interrogation, which was admitted, that forms the basis of defendant's claim of error.

The core of defendant's argument is that once the defendant's counsel advised the police that no statement was to be taken, any questioning or statement thereafter taken was inadmissible. *People* v. *Gunner* (15 N Y 2d 226) is relied on

to support this contention. We do not believe the holding to go to that extent. The statements found objectionable in *Gunner* were taken from the defendant in his ignorance of his right to remain silent and before the attorney had been given any opportunity to advise him, though after the police had knowledge of his desire to do so. As put by the court (p. 231): "We would undoubtedly have reached the same result in *People* v. *Donovan* had the lawyer, rather than having asked to see his client, merely informed the police of his retention and of his desire that no statements be taken from his client and had the police, without telling the suspect about the attorney or of his message, proceeded to question him."

That is not the situation here. The defendant was repeatedly and continuously advised of his rights. The internal evidence of the statement he gave shows that he knew he could refuse to answer any question if he so chose. He was also well aware that his attorney desired him not to answer.

Nor is there any claim that the failure of the defendant to adhere to his attorney's advice was attributable to coercion either by way of physical force, threats, trickery, unduly prolonged insistence or any other pressure. So the question is squarely presented whether a statement made by a defendant contrary to the advice of his counsel, known and so understood by him and the police, cannot be received no matter how desirous the defendant may be to make the statement. To hold that such a statement is interdicted requires a holding that, once counsel is retained and advises, the defendant loses all volition and control of the conduct of his defense and is powerless to adopt the course that he believes will best either satisfy his conscience or produce the most desirable outcome. Obviously, this is not the law. The defendant himself is the final arbiter of the conduct of his defense (*Carter* v. *Illinois*, 329 U. S. 173, 174). We find no authority for an exception in this one respect.

It would be less than frank to fail to call attention to the fact that on the preliminary hearing the trial court indicated certain tentative views of the evidence which were not reflected in the final decision on the motion to suppress the statement. These views represented inferences to be drawn from the testimony which, apparently on fuller consideration, the court did not adopt. The findings, as expressed in the opinion, are supported by the testimony and form the basis for the conclusions above drawn.

The judgment should be affirmed.

CAPOZZOLI, J. (dissenting). Reversible error was committed by the court below when it denied the motion of the defendant, Baker, to suppress his admissions which were made by him after the departure of his counsel, who had surrendered him to police, at the same time stating to the police that the defendant was not to be questioned. The record is clear that the questioning, which resulted in the admissions alleged to have been made by this defendant, was conducted after the departure from the station house of the defendant's counsel, who was led to believe that the defendant was to be booked and brought to court. This procedure, which was engaged in by the authorities, was in direct violation of the constitutional rights of the defendant. (*Escobedo* v. *Illinois,* 378 U. S. 478; *People* v. *Donovan,* 13 N Y 2d 148; *People* v. *Gunner,* 15 N Y 2d 226; *People* v. *Friedlander,* 16 N Y 2d 248; *Miranda* v. *Arizona,* 384 U. S. 436.)

In *People* v. *Gunner* (*supra,* p. 232) the court said: "once a retained attorney contacts the police officer in charge and informs him * * * that he represents the suspect and does not want any statements taken from him, *the police are precluded from thereafter questioning him or, if they do, from using against him any statements which he made in the absence of counsel.*" (Emphasis supplied.)

The attempt on the part of the majority to spell out a waiver by the defendant of the presence of his counsel and a complete willingness on his part to answer the questions of the authorities is completely unsupported by the record.

In the *Miranda case* (*supra,* p. 475), the court said:

"a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. [Citing case.] This court has always set high standards of proof for the waiver of constitutional rights, *Johnson* v. *Zerbst* * * * and we re-assert these standards as applied to in-custody interrogation. * * *

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in *Carnley* v. *Cochran,* 369 U. S. 506, 516 * * * is applicable here:

"'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and

evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not a waiver '.''

Even a most cursory reading of the record convincingly demonstrates that the standards necessary to be observed to spell out a waiver were not complied with and it is, therefore, difficult to understand how the majority arrives at its conclusion that this defendant waived his constitutional rights.

While the evidence, apart from the confession, is adequate to support the verdict of guilty against this defendant, it, nevertheless, would not justify an affirmance by this court, for, as was stated in *People* v. *Donovan* (*supra*, p. 153): '' not knowing what credit and weight the jury gave to the   *   *   *   confession, we cannot say whether the jury would have returned a verdict of guilt if that improperly received statement had been excluded.''

I dissent and vote to reverse the judgment of conviction against Wallace Baker and to order a new trial.

RABIN and McNALLY, JJ., concur with STEUER, J.; CAPOZZOLI, J., dissents in opinion in which EAGER, J.P. concurs.

Judgment of conviction affirmed.