**George R. WOODY, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 20298.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 4, 1967.

Decided May 11, 1967.

Petition for Rehearing En Banc Denied July 5, 1967.

Mr. Justin R. Wolf, Washington, D. C. (appointed by this court), for appellant.

Mr. Henry F. Field, Sp. Atty., Office of U. S. Atty., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee. Mr. James A. Strazzella, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.

BURGER, Circuit Judge:

This is a very simple case which might appropriately be affirmed by a summary order except that the factual setting assumes some importance in light of the dissent.

The evidence showed that the complaining witness had been robbed in his office at gun point by Appellant. After the robbery the victim jumped out a window 12 feet to the ground and, crying "holdup", pursued the assailant. He found Appellant being held at bay by two other citizens who had taken up the chase. Appellant was being held at gun point and had been disarmed. Witnesses testified that Appellant offered to return the stolen money to the victim, who declined, saying the police would want it as evidence. Witnesses for the government also testified that when the police arrived, Appellant handed over the money, saying, "Here is the money, here is all of it," and that he "did it."

Appellant was taken to the stationhouse, where he was given warnings, the adequacy of which are not questioned; here Appellant told officers he was "going to plead guilty and throw himself on the mercy of the court because he only had one record of arrest."

Appellant took the stand in defense and denied committing the offense and denied making any of the incriminating statements attributed to him. He said he "panicked" when the complainant chased him and fled because of this.

■ There is dictum in United States v. Inman[1] that the trial judge should *sua sponte* order a hearing on the voluntariness of a confession and, if he finds it voluntary, instruct the jury with respect to their role in deciding on the use of the confession. Even assuming we were disposed to follow the dictum in *Inman,* which we elect not to do, it should be noted that it has no application to a situation such as existed here. Not only did Appellant fail to make objection to use of the statements, but he also denied making them.

■ A remand would call on the District Judge to decide on the voluntariness of statements which Appellant insists he never made. We are not prepared to assume that Appellant would give a different version of the facts in a hearing now conducted by the District Judge.[2] The testimony he gave at trial that no statements were uttered by him could be called to the attention of the District Judge should Appellant, on a remand hearing, give statements inconsistent with his trial testimony. It would indeed be a most remarkable proposition were an accused permitted, in a non-jury hearing, to admit the utterance of damaging statements but seek to exclude earlier testimony denying the statements offered to impeach him. An accused who fails in his effort to exclude statements he admits uttering may not then—with impunity—take the stand

---

1. 352 F.2d 954 (4th Cir. 1965).

2. The dissent intimates the majority opinion is based on a "presupposition" that a defendant will testify at the nonjury hearing on voluntariness. This is not a presupposition but a fact-reality that it is almost impossible to conceive of a defendant making out a case of an in- voluntary statement unless he takes the stand. *Pyles,* cited by Judge Bazelon, is a case where the accused *failed* to make out a case of involuntariness. The dissent speculates on a theoretical concept unrelated to the realities which trial judges must deal with. The majority opinion does not posit impeachment as inevitable, but rather as a likely reality.

before the jury and give contrary testimony about the circumstances or deny under oath that he ever made the statements which he described to the judge on his motion to suppress. In or out of the presence of the jury, the accused testifies on the record and under oath and his election to try to suppress the admitted utterance may well circumscribe what he may safely thereafter tell the jury. Allowing an accused to testify out of the jury's hearing at 9:30 a. m., for example, does not give him a license for perjury at 11:00 a. m., when the jury is recalled. This is not a game or a sporting contest; an oath to tell the truth has the same significance—and the same consequences—out of the presence of a jury as before a jury.

Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954), teaches that "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's [alleged] disability to challenge his credibility." The Supreme Court there allowed impeachment even though the impeaching evidence had been "illegally secured." A fortiori testimony under oath voluntarily given by an accused at a non-jury hearing to suppress evidence is at least as admissible as evidence "illegally secured" by the Government. See Jones v. United States, 362 U.S. 257, 261–262, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).[3]

█ In short, if the Appellant on remand testified that he had indeed made incriminating statements but that these utterances were coerced, he could surely be impeached by his testimony in this case that he had made no such statements whatever; the trial judge might draw the disagreeable inference that Appellant was lying on one of the two occasions and hence would be free to disbelieve him. Similarly if an accused testifies in a non-jury hearing to suppress evidence, his testimony at that hearing may be used, at the very least, to impeach later contrary statements.

We do not rest solely on the futility of remand. Appellant never contested the voluntariness of the statements and never asked for a hearing on voluntariness; we see no basis for a remand to afford him an opportunity to make a claim he has heretofore eschewed.

Affirmed.

BAZELON, Chief Judge (dissenting):

With respect to appellant's statement to the police officer when he was cornered in the alley, I would follow the procedure set forth in the opinion of the United States Court of Appeals for the Fourth Circuit in United States v. Inman.[1] Under that procedure, the court has a duty to hold a hearing on voluntariness even in the absence of any objection; and if the confession is then admitted, the court must instruct the jury on the law governing the issue, whether or not it is requested to do so.

The duty of the court to act *sua sponte* in determining the question of voluntariness is implicit in this court's decisions in Proctor v. Anderson[2] and Curtis v. United States.[3] In each we remanded for a hearing on voluntariness although there had been no objections made on that ground at any point during the trial. No preliminary hearing on the voluntariness of the confession was requested or held. However, even in the

---

3. Neither Lee v. State of Mississippi, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1948), nor Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964), is to the contrary; these cases do not treat with how the finder of fact may consider a defendant's contradictory testimony. A witness is always free to make statements which contradict prior utterances, but a fact finder who evaluates his credibility may take inconsistencies into account.

1. 352 F.2d 954 (1965).

2. 124 U.S.App.D.C. 103, 361 F.2d 557 (1966) (per curiam).

3. 121 U.S.App.D.C. 283, 349 F.2d 718 (1965) (per curiam).

absence of objection, the court did instruct the jury on the issue. If there had been no obligation on the court to introduce the issue *sua sponte* by a hearing and instructions, the court's instructions would have been a sheer gratuity to the defendant and our remand for a hearing inappropriate.

Contrary to the majority's presupposition, a defendant need not testify at the voluntariness hearing; he can rely upon the testimony and cross-examination of other witnesses to establish coercion.[4] Furthermore, he may testify at the hearing to the circumstances which surrounded the making of an alleged statement while at the same time denying that he did in fact make the statement. He thus can avoid the impeachment problem which the majority posits as inevitable.

But even if, as the majority asserts, a defendant's inculpatory testimony at the hearing could be the basis for his impeachment at trial, the Supreme Court has long since given him the right to so testify. In Lee v. State of Mississippi [5] the defendant denied at trial that he had made an admission of guilt when apprehended, yet at a preliminary hearing on voluntariness he took the stand. The Mississippi Supreme Court held that

"one accused of crime cannot be heard to say that he did not make a confession at all, and at the same time contend that an alleged confession was made under the inducement of fear." [6] The Supreme Court of the United States reversed, holding that "a conviction resulting from * * * use of a coerced confession * * * is no less void because the accused testified at some point in the proceeding that he had never in fact confessed, voluntarily or involuntarily. Testimony of that nature can hardly legalize a procedure which conflicts with the accepted principles of due process." [7] The continuing vitality of *Lee* is confirmed by Boles v. Stevenson,[8] where the defendant took the stand during the trial and denied having made an admission of guilt. Yet the Supreme Court invalidated the conviction on the ground that the absence of a preliminary examination on voluntariness and appropriate jury instructions resulted in a procedure "not 'fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession.' " [9]

Since the court affirms the conviction, it would serve no useful purpose to discuss the admissibility of the other statements made by appellant.

Accordingly, I respectfully dissent.

---

4. See, e. g., Pyles v. United States, 124 U.S.App.D.C. 129, 362 F.2d 959 (1966), where only the arresting officer testified at the voluntariness hearing. It is true that "to *substantiate* a defendant's contention that his confession was involuntary, it is *generally* necessary for him to take the stand." Wright v. United States, 102 U.S.App.D.C. 36, 45, 250 F.2d 4, 13 (1957). (Emphasis supplied.) But this means only that normally a defendant may find it difficult to establish coercion in the absence of his own highly relevant testimony, not that his testimony is essential to the hearing itself. *Cf.* Jackson v. Denno, 378 U.S. 368, 389 n. 16, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); United States v. Carignan, 342 U.S. 36, 38, 72 S.Ct. 97, 96 L.Ed. 48 (1951).

5. 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1948).

6. Lee v. State, 201 Miss. 423, 435, 30 So. 2d 74, 75 (1947).

7. 332 U.S. at 745, 68 S.Ct. at 301. It is significant that the Court found it unnecessary to decide whether the defendant had in fact admitted during his testimony at the hearing that he had made the confession. *See id.* at 744 n. 1, 68 S.Ct. at 301.

8. 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964) (per curiam).

9. *Id.* at 45, 85 S.Ct. at 176, quoting Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).