## Commonwealth ex rel. Raymond, Appellant, *v.* Rundle.

314

Argued December 6, 1966. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Cecil B. Moore,* for appellant.

Stanley M. Shingles, Assistant District Attorney, with him Alan J. Davis, Assistant District Attorney, and Arlen Specter, District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, September 26, 1967:

On May 11, 1961, the appellant, Albert Raymond, was convicted by a jury in Philadelphia County of murder in the first degree and punishment was fixed at death. Following denial of post-trial motions and imposition of sentence in the court below, an appeal was prosecuted in this Court. We affirmed the judgment on October 9, 1963. See 412 Pa. 194, 194 A. 2d 150 (1963). On June 22, 1964, the United States Supreme Court denied certiorari. See 377 U.S. 999 (1964), rehearing denied, 379 U.S. 873 (1964).

In November 1964, Raymond instituted an action in habeas corpus in the Court of Common Pleas of Philadelphia County which was dismissed without hearing.[1] An appeal challenging the correctness of that order is now before us.

Raymond was convicted of killing William Powell, a Philadelphia City policeman. The Commonwealth contended that at the time Powell, while in plain clothes, was engaged in the investigation of vice, and Raymond, unaware of his identity, enticed him to leave a bar and go to a nearby house for the purpose of robbing him. A fight ensued, during which Powell was fatally shot.

At trial in order to establish plan, motive and design, the Commonwealth, during its case in chief, offered evidence to show that exactly one week before the Powell killing, Raymond had lured another in-

---

[1] At the time this petition was presented to the court below, Raymond's counsel informed the court that only questions of law were involved and did not offer or seek the opportunity of presenting any testimony.

dividual, Osyp Sudomlak, from a bar to the same house, under similar circumstances, where he assaulted and robbed him. In his own trial testimony, Raymond unequivocally denied any involvement in the Sudomlak crime. On cross-examination he was asked, inter alia, if he had not previously admitted to John Bright, an agent of the parole board of the Commonwealth of Pennsylvania, that he had assaulted and robbed a retired bartender (Sudomlak fitted this description). Raymond replied, "Mr. Bright is a damn liar if he says I did say it."

In rebuttal, the Commonwealth offered Bright as a witness, who testified that he had interviewed Raymond in the Philadelphia county prison and Raymond told him about robbing and assaulting a retired bartender about one week before the Powell killing.

When this interview took place, Raymond was already under indictment for the Powell killing and had retained counsel to defend him. It is also clear that Bright was sent to see Raymond by an assistant district attorney and a captain of the Philadelphia Police Department for the purpose of securing information about the Powell killing.

Raymond contends that it was error of constitutional dimension to permit the evidentiary use of Bright's testimony at trial. This position is based on two related, yet independent, grounds: (1) That Raymond's rights under the Fifth and Sixth Amendments were violated by the evidentiary trial use of the incriminating statements elicited from him by an agent of the prosecuting authorities in the absence of already retained counsel after he had been indicted, citing *Massiah v. United States,* 377 U.S. 201 (1964); and (2) That the interview by Bright arranged by the prosecuting authorities, without notice to and in the absence of his counsel, was so unfair that it violated due process of law, and any evidence emanating there-

from was constitutionally tainted. It is argued that this is particularly so because: (a) Raymond had been advised by his attorney not to answer any questions in his absence, and this advice was given in the presence of the same prosecuting officers who arranged the Bright interview;[2] (b) Bright was told by Raymond during the early stages of the interview involved that he had counsel who told him not to answer any questions concerning the crime in his absence.

In *Commonwealth v. Coyle*, 427 Pa. 72, 233 A. 2d 542 (1967), we discussed the impact of *Massiah* and concluded that any ruling therein absolutely banning post-indictment police questioning in the absence of defense counsel need not be applied retroactively. Since the instant trial occurred years before the decision in *Massiah* was announced, the view on this point, expressed in *Coyle*, is controlling here.

In evaluating the merit of Raymond's argument that the evidence under discussion was obtained by unfair conduct on the part of the prosecuting authorities, all of the attending circumstances disclosed by the record must be considered.

---

[2] After Raymond was placed under arrest, he gave a recorded statement to the authorities in the presence of his attorney. In Raymond's brief he says it was then agreed by those present that Raymond would not be questioned further unless his attorney was there. We find nothing in the record to support this statement.

A recent decision of the Appellate Division of the New York Supreme Court is of some interest here. In *People v. Baker*, 281 N.Y.S. 2d 161 (1967), defense counsel surrendered his client to the police and advised them that no statement was to be taken in his absence. Thereafter, defendant was questioned absent counsel and made admissions. Counsel contended that his prior warning to the police vitiated the subsequent statement per se, regardless of circumstances. It was held that where the defendant, having been made well aware of his constitutional right to silence, cognizant of his attorney's advice, and uncoerced by station house pressure either physical or psychological decided to speak of his own volition, such utterances were admissible.

From Raymond's own description of the interview during his trial testimony, these facts clearly appear: (1) Raymond was informed, before any questioning began, of Bright's identity, his official position and the fact that he worked "for the state and the police" as "an in-between man"; (2) Raymond was aware he didn't have to answer any questions and was also told by Bright, "It is your right" not to say anything; and (3) at least insofar as the present record is concerned Raymond's statements were not coerced or in any sense involuntary.

Assuming arguendo, that the initial action of the prosecuting authorities in sending Bright to see Raymond, without prior notice to his counsel, was "unfair" as that term is understood by the average layman, it is the "legal" unfairness, or the quantum of due process, present in the interview itself which is the paramount and pivotal point to be considered in deciding if constitutional rights were violated. In view of Raymond's own trial testimony, described before, and the complete absence of any indication that his statements were not freely self-determined, we are not convinced that unfairness in a constitutional sense occurred.

Raymond additionally contends that in any event he is entitled to a post-trial independent hearing, and judicial determination of the voluntariness of his statements to Bright, citing, *Jackson v. Denno*, 378 U.S. 368 (1964). With this we agree.

The ruling in *Jackson*, supra, is retroactive. See *Johnson v. New Jersey*, 384 U.S. 719 (1966), and *Commonwealth ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965). While no specific objection to the use of Bright's testimony on the ground of involuntariness was interposed at trial, counsel certainly indicated during the cross-examination of Bright and the questioning of Raymond during his testimony in sur-rebuttal, that all of Raymond's statements to

Bright were compelled and given under fear that if he didn't answer Bright's questions, Raymond would be imprisoned for parole violation.[3] This in our opinion was sufficient to raise the issue. Compare *Jackson v. Denno,* supra.

The Commonwealth argues that a post-trial "Jackson" hearing is unnecessary, because the court below in its opinion accompanying the order dismissing the post-trial motions made a factual finding, that Raymond's statements on the occasion involved were voluntary and this determination satisfied the requirements of *Jackson*. A simple answer to this argument is that where *Jackson* applies, not only is an independent judicial determination of the voluntariness issue. required, but also a full hearing on the question separate and apart from the jury. See *Johnson v. New Jersey,* supra, and *Townsend v. Sain,* 372 U.S. 293 (1963). Moreover, the lower court's opinion does not clearly manifest the court considered that the presence of psychological pressures may have compelled Raymond's utterances.

The Commonwealth further argues that where a defendant during trial categorically denies making the statement involved, a "Jackson" hearing and independent judicial determination of the voluntariness question is not required.[4] We are not persuaded that this necessarily follows and particularly so in the instant case. Certainly, the denial, in itself, would not relieve the Commonwealth of its burden of establishing that the statements were made freely and voluntarily, and whether or not this burden was met should be de-

---

[3] Raymond at the time was on parole resulting from a sentence previously imposed in another case. This fact was kept from the jury during the trial of the instant case.

[4] The recent decision of *Woody v. United States,* 379 F. 2d 130 (D.C. Cir. 1967), is advanced in support of this position.

termined judicially after a complete independent hearing.

Therefore, the record will be remanded for further proceedings consonant with the requirements of *Jackson v. Denno,* supra.

Finally, we find no merit in Raymond's contentions that he was denied all opportunity of entering a challenge to the grand jury[5] and that publicity given the case at the time of trial through the news media prevented his being tried by a fair and impartial jury.

Even if no opportunity existed to enter a challenge before indictment, Raymond had ample opportunity to enter a proper challenge to the grand jury after indictment through a motion to quash. See *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A. 2d 552 (1967). No such motion was filed.

As to the attending trial publicity, a study of the voir dire examination of the jurors selected to try the case is convincing that they were free of any such influence. Cf. *Commonwealth v. Lopinson,* supra.

The order of the court below is vacated and the record is remanded with directions to proceed as indicated before.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

[5] Raymond was indicted within ten days of the preliminary hearing.