**UNITED STATES of America, Plaintiff,**

v.

**Manuel BECKER, Defendant.**

No. 21501.

United States District Court
W. D. Missouri, W. D.

Sept. 30, 1963.

F. Russell Millin, U. S. Dist. Atty., Calvin Hamilton, Asst. Dist. Atty., Kansas City, Mo., for plaintiff.

Sol M. Yarowsky, Carroll C. Kennett, Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This case pends on a motion, filed by the Government pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, that seeks leave to dismiss the indictment in this case.

Defendant was indicted by the grand jury on March 22, 1963. The indictment alleges that defendant committed perjury in connection with a matter under inquiry before that grand jury. The indictment alleged generally that the grand jury was conducting an investigation to determine whether there were violations in this District of Title 26, United States Code § 7201, Title 18, United States Code § 1953, and other federal criminal statutes.

The indictment alleged specifically that it was material to the grand jury's investigation to ascertain whether one Morris Klein, an alleged Kansas City, Missouri, gambler and bookmaker, had willfully failed to report on his federal income tax returns for several years preceding the grand jury investigation, income which he had received in repayment of debts owed him, pursuant to his alleged bookmaking activity.

The defendant was alleged to have testified as follows before the grand jury:

"Q. * * * I want to ask you if you have ever had any financial transactions with Morris Klein?

"A. With Morris Klein here, no sir.

"Q. Never had?

"A. No, sir.

"Q. No misunderstanding, now, about what my meaning is or what my question is?

"A. Yes, sir, I understand you, and I have never had any financial dealings with the Morris Klein you're speaking of.

"Q. Well, is there more than one?

"A. There is a Morris Klein in Chicago.

"Q. Have you had any financial dealings with him?

"A. Yes.

"Q. Is that what this relates to?

"A. No.

"Q. I'm talking about the Morris 'Snag' Klein that has a place of business at 303 West Ninth Street called the Original Toy and Jobbing Company and who is known by reputation as a

professional gambler, that's the Morris Klein I'm talking about.

"A. I have never had any financial dealings with him.

"Q. Never owed him any money?

"A. No, sir.

"Q. At any time in your life?

"A. No, sir.

"Q. Never gambled with him?

"A. No.

"Q. What is your explanation of the note schedule with Morris Klein's name at the top of it?

"A. The one with Morris Klein's name at the top of it was money borrowed from a sausage manufacturer in Chicago.

"Q. Morris Klein?

"A. Yes, sir.

"Q. When did you borrow that?

"A. He's dead now, it was two or three years ago.

\* \* \* \* \* \*

"Q. You say his name is Morris Klein?

"A. Yes.

"Q. Where did he live?

"A. It's the Sinai Sausage Company.

\* \* \* \* \* \*

"Q. Chicago, Illinois?

"A. Yes sir.

"Q. What did he have to do with the company?

"A. He was the owner of the company, one of the partners of the company.

\* \* \* \* \* \*

"Q. How much did you borrow from him?

"A. I think I'd gotten $13,000.

\* \* \* \* \* \*

"Q. Who did you make the payments to?

"A. To an agent here in town.

"Q. Who?

"A. Sam Epstein."

The indictment, of course, also alleged that the quoted testimony was false; that the defendant well knew and believed that there was no Morris Klein associated with the Sinai Sausage Company of Chicago from whom he had borrowed any money; and that he had never made payments on any loan to one Sam Epstein, as an agent for any Morris Klein who lived in Chicago, Illinois. And finally, the indictment alleged that the defendant well knew, in truth and in fact, that he was in debt to Morris Klein of Kansas City, Missouri, and that he was making periodic payments to that Morris Klein in repayment of a gambling debt.

The Government, in its suggestions in support of the motion to dismiss the indictment stated that:

"The interests of justice and of law enforcement are sometimes promoted by a dismissal of an indictment even though the government cannot argue for dismissal on the grounds of insufficiency of the evidence or on the grounds of a superseding indictment. Since neither of these bases exist here, the government, for the purpose of supporting its motion to dismiss, has compiled, and attached hereto, a 37 page factual summary which is supported by 826 pages of documents, affidavits, memoranda, grand jury testimony, and other records setting forth in detail Becker's gambling and financial activities. This summary and its appendixed materials is being presented under seal to the Court for an *in camera* inspection because certain of the supporting documents are transcripts of grand jury testimony, the disclosure of which may not be made without a Court order in accordance with Rule 6(e) of Federal Rules of Criminal Procedure."

The Government's motion and suggestions in support were filed in open court. At that time we made inquiry as to whether there was any objection on the part of defendant in regard to the Government's request that we review *in*

*camera* the pertinent facts submitted in the numerous documents presented to us at that time. Defendant made no objection. In fact, defendant not unexpectedly urged that the Court sustain the Government's motion.

Counsel for the defense did, however, request that the Government's suggestions in support of its motion be expunged from the record of this Court. Defense counsel believed the request should be granted for reasons personal to the defendant although they conceded that they knew of no incorrect statements of fact contained in the Government's suggestions.

We think it important that the record stand as it was made at the time the motion was filed and therefore will deny defendant's request to expunge. We do not deem it necessary to pass upon the question of whether all statements contained in the Government's suggestions are established beyond reasonable doubt. We do, however, believe it necessary that the record of this Court reflect the basis upon which the exercise of its judicial discretion was invoked, under Rule 48 (a). That rule expressly provides that no indictment shall be dismissed except by leave of court. Leave to dismiss any indictment returned by a Federal grand jury is never granted without careful judicial consideration and approval.

■ When our jurisdiction and discretion is invoked under Rule 48(a), the record must show something more than the mere conclusion of the Government that the interest of justice would be served by the dismissal of the indictment involved.

Should we grant the defendant's request to expunge the Government's suggestions in support of its motion, the record would be bare as to the reasons that motivate the Government's action. Should we grant defendant's request to expunge, the record in this case would then be quite similar to the inadequate record presented to Chief Judge Steckler in United States v. Shanahan (S.D.Ind. 1958–1959), 168 F.Supp. 225, 229.

In that case a motion was presented by the Government pursuant to Rule 48 (a) to dismiss a grand jury indictment that alleged that perjury had been committed in connection with testimony given before a United States grand jury. The initial motion of the Government merely recited that it was made "in the interests of justice". That motion was supported neither by suggestions in support nor by any documentation upon which the Court could review the factual situation upon which the Government based its conclusion that justice would be served by the dismissal.

In denying the motion to dismiss as originally filed, the court pointed out in Shanahan that "ultimately, it is for the court in either granting or denying leave to file the dismissal, to agree or disagree with the conclusion of the Attorney General or the United States Attorney that the dismissal is 'in the interests of justice.'" Judge Steckler answered in the negative his own rhetorical question, "[h]ow can any judge exercise the sound judicial discretion with which he is charged under Rule 48(a) when he is given absolutely no factual basis upon which to base such discretion".

While Judge Steckler refused to dismiss on the basis of the original conclusory and unsupported motion, he did however grant the Government an additional opportunity "to give the court in an appropriate manner such information as [it] believe[s] justifies the conclusion that in the interests of justice the indictment should be dismissed."

The Government thereafter informed the court fully of the factual basis upon which it based its conclusion that the indictment there involved should be dismissed. Judge Steckler thereafter reconsidered the Government's motion and determined judicially that the United States Attorney had demonstrated to the court's satisfaction that a factual basis did exist that did support the Government's conclusion. Leave to dismiss was then granted and the indictment was ordered dismissed without prejudice.

■ We think the rationale of Shanahan is applicable to this case. Defendant's request to expunge the Government's suggestions in support of its motion to dismiss will therefore be denied.

We are not unmindful of the fact that defense counsel based the request made on behalf of the defendant upon reasons "personal" to him. We cannot conceive of any legitimate personal reason that the defendant could urge in support of the request to expunge.

The Government's suggestions, of course, reveal publicly that the defendant's mania for gambling forced him finally into a situation which reduced him to committing perjury before a Federal grand jury and that defendant was caught in a series of quite clumsy and transparent lies. Those suggestions also reveal publicly defendant's disregard of family and of all concepts of decency or courage to face the consequences of his own selfish indulgence.

■ But we cannot accept either defendant's belated embarrassment or defendant's probable fear of future physical harm as valid personal reasons for his request that the records of this Court be expunged.

On the very day that the motion that now pends in this case was filed, this Court imposed sentence in another perjury case that afforded an excellent example of the consistent attitude traditionally demonstrated by the law enforcement officials of the United States Government in those rare instances which involve efforts to obstruct the administration of criminal justice in a court of the United States. The times are indeed out of joint if either this Court or the citizens of this or any other community in these United States accept as valid the nostrum that there are forces abroad in our land that are more powerful than the forces of law and order.

A close review of the dismal and sordid record in this case enables us to understand that the defendant here involved might well have been motivated by fear of unseen and unknown persons but that is far from saying that the record shows that defendant's fear is well founded. Only when persons caught in the web in which defendant became entangled come to understand that law and order does pay will peripheral cases such as this cease to appear on the dockets of our courts. Had the defendant told the truth, the whole truth, and nothing but the truth to the grand jury, as he swore he would, he would never have been before this Court in the first place. When he elected to stand with those who oppose the laws of the United States he must accept the public disgrace that exposure of that fact entails.

We have reviewed in detail all of the voluminous documentation handed us for our *in camera* examination. It is sufficient to say that our examination convinces us that the Government is fully justified in its conclusion that the interests of justice and of law enforcement would be better promoted by a dismissal of this indictment than by a trial of this case.

■ The cases cited in Shanahan make clear that the dismissal prayed for in the Government's motion, being equivalent to a *nolo prosequi* under the common law, does not operate as a bar to a subsequent prosecution for the offense involved, should a later indictment be filed within the period of the statute of limitations. It is therefore apparent that should the Government be mistaken in its judgment of the benefits it hopes to attain by the dismissal of this case at this time, no permanent harm can result, at least during the period of the statute of limitations.

For the reasons stated, defendant's request to expunge should be and is hereby denied; the Government's motion to dismiss should be and is hereby sustained; and the indictment should be and is hereby dismissed without prejudice.

It is so ordered.