**UNITED STATES of America**
**v.**
**Robert Louis AMMIDOWN, Appellant.**

**UNITED STATES of America**
**v.**
**Robert L. AMMIDOWN, Appellant.**
**Nos. 72–1694, 72–1695.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 14, 1972.

Decided Nov. 16, 1973.

Rehearing Denied May 10, 1974.

See also D.C., 341 F.Supp. 1355.

Albert J. Ahern, Jr., and Thomas W. Farquhar, Washington, D. C., were on the motion for appellant.

John J. Wilson, Washington, D. C., was on the motion as amicus curiae in support of the District Court.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, and James E. Sharp, Asst. U. S. Attys., were on the motion for appellee.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

In this unusual case the trial judge rejected a plea bargain struck between the prosecution and the defense on the ground that the public interest required that the defendant be tried on a greater charge. Under the facts presented, we hold that the trial judge exceeded his discretion and accordingly reverse.

### I.

In a case of extraordinary notoriety, Robert L. Ammidown was charged with first degree murder and conspiracy to commit murder in the death of his wife. Ammidown admitted that a month previous he arranged to have her murdered at a parking garage of a Virginia department store. At the last minute he

changed his mind, because he did not want his son, who was to accompany his mother on that day, to witness the murder. Subsequently, according to his written confession, Ammidown and an associate, Richard Anthony Lee, devised a plan whereby Lee would abduct Mrs. Ammidown and by threat to her life extort a sum of money to be used by Ammidown and Lee to make the down payment for a club on the Eastern Shore of Maryland. The plan called for Ammidown to take his wife to dinner at the Flagship Restaurant in Southwest Washington. After dinner, as they were departing from the Flagship, Lee would halt Ammidown's car at a specified intersection near the restaurant.

And so it was done. In due course, and at the prearranged spot, Lee jumped into Ammidown's car and directed him to drive to the East Capitol Street Bridge, where Lee dragged Mrs. Ammidown from the car and raped her, as planned, to impress Mrs. Ammidown "with the seriousness of the threat."

What then happened was that Lee killed Mrs. Ammidown. Ammidown did not confess to complicity in the murder.

Just prior to trial, the United States Attorney and Ammidown entered into this agreement: Ammidown would plead guilty to second degree murder, and the first degree murder charge would be dismissed. There was no agreement for the prosecutor to recommend sentence less than the maximum, life imprisonment. Ammidown, then aged 49, had no possibility of being even considered for parole for 15 years. Ammidown agreed to testify in the grand jury proceedings and impending trial of Lee, a much younger man, who was believed by the

prosecution to be involved in another murder.

The trial judge, however, refused to approve the agreement and accept the lesser plea. With full understanding of the prosecutor's concern with the importance of Ammidown's agreement in connection with its successful prosecution of Lee,[1] the court nonetheless decided that under Rule 11 of the Federal Rules of Criminal Procedure it had the discretion to refuse the plea when it found that the crime was so heinous and the evidence of guilt so overwhelming that the public interest would be ill-served by a judgment of second degree murder, which it referred to as a "tap on the wrist."[2] Appellant then pleaded not guilty to first degree and second degree murder; at trial he was convicted of first degree murder and felony murder and sentenced to two terms of life imprisonment, to run consecutively.

Appellant now asserts that the failure of the trial court to accept his proffered plea of guilty to second degree murder constituted reversible error, and asks this court to remand with instructions to enter a judgment of second degree murder. The Government has decided that it could not in good conscience oppose the appellant; consequently, the position of the trial judge has been ably presented by John J. Wilson, Esquire, who was appointed by this court as "amicus curiae for the purpose of filing a memorandum supporting the position taken by the district judge."

## II.

Rule 11 of the Federal Rules of Criminal Procedure[3] governs pleading in criminal cases; but we would err were we to

1. Tr. S–41.

2. Tr. S–42.

3. Rule 11 of the Federal Rules of Criminal Procedure provides as follows:
   A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant

personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

circumscribe our inquiry so narrowly. Plea bargaining telescopes into one transaction three distinct stages of the criminal proceeding: plea to one charge; dismissal of a greater one; and sentencing. The formal plea of guilty is often the manifestation of assent to a bargain whereby a charge is dismissed, normally a matter almost exclusively within the discretion of the prosecutor, in order to secure for the defendant a less severe range of sentencing alternatives, normally the exclusive province of the judge. We begin our decision with a discussion of the responsibilities of judge and prosecutor in the component stages of the process.

### A.

By its terms, Rule 11 deals with the moment when the accused stands before the judge to enter his plea. Although the rule provides that a trial court "may refuse to accept a plea of guilty," it fails to delineate the circumstance under which it may do so. The rule requires a court accepting a plea to determine whether it has been voluntarily tendered and whether there is a factual basis for the plea. Ordinarily the concern of Rule 11 is with the propriety of the waiver of the right to trial. See 1 Wright, Federal Practice and Procedure §§ 171–72 (1969). Much of the litigation surrounding guilty pleas bears on these and related questions. *See, e. g.,* Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). One line of cases has concerned the freedom of the trial judge to prohibit the waiver of trial where the defendant has protested his innocence while proclaiming his readiness to plead. The Supreme Court

has concluded that a plea tendered under these circumstances is valid where there is strong evidence of the defendant's guilt, North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Earlier rulings of lower courts had disagreed on the question whether the trial judge may refuse a plea in this situation. *Compare* Griffin v. United States, 132 U.S.App.D.C. 108, 405 F.2d 1378 (1968); *with* United States v. Bednarski, 445 F.2d 364 (1st Cir. 1971); McCoy v. United States, 124 U.S.App.D.C. 177, 363 F.2d 306 (1966).

There are no precedents on the problem before us, whether the plea, endorsed by the prosecutor, may nonetheless be rejected by the trial judge because of his conclusion that the defendant should be tried on the higher charge. Rule 11 and the existing case law seem to provide no guide, although one does find in the commentaries isolated phrases voicing the fear that the judge should not permit the plea bargain to become the means whereby the hardened criminal escapes justice.[4] Neither is there any scholarly discussion of a conflict between the authority of the prosecutor and the trial judge to accept pleas to lesser included offenses in the interests of justice. Discussion of the roles of judge and prosecutor has most often concerned the area of dismissals of criminal indictments.

### B.

The element in a plea bargain of dismissal of the charge of the greater offense leads us to consider Rule 48(a) of the Federal Rules of Criminal Procedure,[5] which requires the prosecutor to obtain leave of court in order to terminate a prosecution by dismissal of an indictment. Rule 48(a) does not ap-

---

4. See, e. g., D. Newman, Conviction 135–36 (1966); Task Force Report: The Courts, The President's Comm'n on Law Enforcement & Administration of Justice 11, 12–13 (1967); ALI Model Code of Pre-arraignment Procedure § 350.5(2)(c) (Tent.Draft No. 5 1972).

5. Rule 48(a): "By Attorney for Government. The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

ply as such to the case at bar, but study of the judicial role in dismissals illuminates our course. As proposed by the Advisory Committee this provision would have adopted the common law rule that the power of the prosecutor to enter a nolle prosequi in a criminal case was unrestricted,[6] and added only the requirement, prevalent in state practice, that the prosecutor state his reasons for seeking dismissals. See 3 Wright, Federal Practice and Procedure § 812 n.13 (1969). However, when this rule was promulgated by the Supreme Court in 1944, it substituted the requirement that dismissal be obtained only by leave of court. The Supreme Court did not state reasons for its action. The primary concern, at least as discerned by subsequent decisions of other federal courts, was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.[7] A similar concern had been voiced prior to Rule 48(a), in the rare instances when the prosecutor sought court sanction though not required by law, and on occasion courts prevented dismissals pregnant with the possibility of harassment.[8]

A distinctly different situation is presented when the defendant concurs in the dismissal but the court is concerned whether the action sufficiently protects the public. As to this, while there is a paucity of authority, some principles do emerge. First, Rule 48(a)'s requirement of judicial leave, theretofore known in state practice, gives the court a role in dismissals following indictment.[9] Second, in the exercise of its responsibility, the court will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis.[10] Third, the court does not have primary responsibility, but rather the role of guarding against abuse of prosecutorial discretion. The rule contemplates exposure of the reasons for dismissal "in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors," and in pursuance of this purpose "to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial."[11]

In this context, it may be helpful to note the considerations, other than protection of defendant, that have been taken into account by courts. If the reason is that the evidence is not sufficient to warrant prosecution, the court recognizes that the responsibility is on the prosecution and is satisfied "if there is a considered judgment," and an application made in good faith, unless it ap-

---

6. Confiscation Cases, 7 Wall. (74 U.S.) 454, 19 L.Ed. 196 (1869); United States v. Woody, 2 F.2d 262 (D.Mont.1924); United States v. Brokaw, 60 F.Supp. 100 (S.D.Ill. 1945).

7. Woodring v. United States, 311 F.2d 417, 424 (8th Cir. 1963); United States v. Cox, 342 F.2d 167, 171 (5th Cir. en banc), cert. denied, Cox v. Hauberg, 381 U.S. 935, 85 S. Ct. 1767, 14 L.Ed.2d 700 (1965); United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n, 228 F.Supp. 483, 486 (S. D.N.Y.1964).

8. See, e. g., United States v. Krakowitz, 52 F.Supp. 774 (S.D.Ohio 1943).

9. As to state practice, see Note, U.Pa.L.Rev. 1057, 1064–68 (1955). In some states the court is assigned the primary responsibility, see, e. g., Cal.Ann.Pen.Code § 1385:

> The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for dismissal must be set forth in an order entered upon the minutes. . . .

10. United States v. Shanahan, 168 F.Supp. 225–229 (S.D.Ind.1958); United States v. Doe, 101 F.Supp. 609, 611 (D.Conn.1951) (may be submitted in camera, if necessary to avoid prejudice to the government).

11. Opinion of Judge Weinfield in United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n, supra note 7 at 486 of 228 F.Supp.

pears that the assigned reason for the dismissal has no basis in fact.[12] In one case, a district court stated that a complete dismissal of charges against an individual, amply supported by the evidence, was not properly grounded in the consideration that the defendant corporation of which he was president would comply with ecology laws.[13] Without commenting on that opinion as such, we note that it expressly recognized that a different consideration applies when the case is not entirely dismissed as to a defendant but he has received a substantial sentence for a phase of the same offense.[14] And of course that is the situation that is involved when there is no dismissal simpliciter, but a plea of guilty to a lesser included offense like second degree murder.

Of particular significance to the case at bar is that even a court which would not accept an unexplained motion for dismissal determined, on reconsideration, that it was satisfied with the prosecutor's subsequent explanation that prejudice would likely be worked upon the Government in another criminal action.[15]

### C.

The third element of a plea bargain involving a plea to a lesser included offense, and indeed the most frequent motive behind it, is to circumscribe the judge's discretion in pronouncing sentence. See D. Newman, Conviction 105 (1966). The negotiated plea reduces the upper and lower limits of the range of sentence available to the judge. It is axiomatic that, within the limits imposed by the legislature, imposition of sentence is a matter for discretion of the trial judge.[16] The prosecutor has no role beyond the advisory, and even that is frowned on in the District Court for the District of Columbia. We hesitate to say, therefore, that the United States Attorney and the defendant can by plea manipulate this traditional power of the judge without any recourse by the judge permitting him to forestall gross abuses of prosecutorial discretion.

### D.

We have identified that both the District Judge and the United States Attorney have roles in the plea bargaining process. What is required is an effort to harmonize their responsibilities, and to suggest a standard for determining when judicial intervention may be proper.

■ We start with the presumption that the determination of the United States Attorney is to be followed in the overwhelming number of cases. He alone is in a position to evaluate the government's prosecution resources and the number of cases it is able to prosecute. See United States v. Fleming, 215 A.2d 839 (D.C.App.1966).

Where vigorous prosecution of one case threatens to undermine successful prosecution of another, it has traditionally been the prosecutor who determines which case will be pressed to conclusion, and his decision has been given great deference by the courts. See, e. g., United States v. Shanahan, 168 F.Supp. 225, 230 (S.D.Ind.1959).

---

12. See United States v. Greater Blouse, Skirt & Neckwear Contractors Assn., *supra* note 7, at 489.

13. United States v. Bettinger Corporation, 54 F.R.D. 40 (D.Mass.1971).

14. *Id.* at 41, quoting on this point from United States v. Doe, *supra* note 10.

15. United States v. Shanahan, *supra* note 10, 168 F.Supp. at 230.

In another decision approving a dismissal of a perjury indictment notwithstanding ample evidence of guilt, following an ex parte examination of documents supplied by the Government, the court stated that these justified the Government's conclusion that the interest of justice and law enforcement would be better promoted by dismissal than trial, and further noted that the dismissal was accompanied by the "disgrace" to defendant supplied by the reference to the evidence of guilt in the Government's public disclosure of its suggestion for dismissal. United States v. Becker, 221 F.Supp. 950 (W.D.Mo.1963).

16. *See* C. Wright Federal Practice and Procedure § 512 (1969).

622

■ On the other hand, we do not think Rule 48(a) intends the trial court to serve merely as a rubber stamp for the prosecutor's decision. We agree that "the judge should be satisfied that the agreement adequately protects the public interest". Newman, *supra*, at 136; The Challenge of Crime in a Free Society: Report of the President's Commission on Law Enforcement & Administration of Justice 118 (1966).

We now state what, in our view, are the appropriate doctrines governing trial judges in considering whether to deny approval either to dismissals of cases outright or to the diluted dismissal—a guilty plea to a lesser included offense.

■ First, the trial judge must provide a reasoned exercise of discretion in order to justify a departure from the course agreed on by the prosecution and defense. This is not a matter of absolute judicial prerogative. The authority has been granted to the judge to assure protection of the public interest, and this in turn involves one or more of the following components: (a) fairness to the defense, such as protection against harassment; (b) fairness to the prosecution interest, as in avoiding a disposition that does not serve due and legitimate prosecutorial interests; (c) protection of the sentencing authority reserved to the judge. The judge's statement or opinion must identify the particular interest that leads him to require an unwilling defendant and prosecution to go to trial.

■■ We now turn to the content of these components, and begin by passing any discussion of fairness to the defense, since it is not directly involved in the case at bar and it has already been identified in the precedents referred to earlier in this opinion. As to fairness to the prosecution interest, here we have a matter in which the primary responsibility, obviously, is that of the prosecuting attorney. The District Court cannot disapprove of his action on the ground of incompatibility with prosecutive responsibility unless the judge is in effect ruling that the prosecutor has abused his discretion. The requirement of judicial approval entitles the judge to obtain and evaluate the prosecutor's reasons. That much, indeed, was proposed by the Advisory Committee, and the Supreme Court's amendment obviously did not curtail the proposed authority of the judge. The judge may withhold approval if he finds that the prosecutor has failed to give consideration to factors that must be given consideration in the public interest, factors such as the deterrent aspects of the criminal law. However, trial judges are not free to withhold approval of guilty pleas on this basis merely because their conception of the public interest differs from that of the prosecuting attorney. The question is not what the judge would do if he were the prosecuting attorney, but whether he can say that the action of the prosecuting attorney is such a departure from sound prosecutorial principle as to mark it an abuse of prosecutorial discretion.

■ In like vein, we note that a judge is free to condemn the prosecutor's agreement as a trespass on judicial authority only in a blatant and extreme case. In ordinary circumstances, the change in grading of an offense presents no question of the kind of action that is reserved for the judiciary.

Applying these tests to the case at bar, we find the record establishes beyond all doubt that the United States Attorney considered, indeed agonized over, the public interest and concluded that it was best served by assuring a successful prosecution of Lee—"a young man . . . . a killer." The Assistant United States Attorney presented this to the court unequivocally:

> We have spent night after night trying to resolve this thing. We have talked with the homicide officers. We have had them to our office. We have pulled the file of Richard Anthony Lee. Your Honor, we are scared to death that unless there is a successful way to prosecute this man—he is a

young man. We believe he is a killer. We believe that somewhere in this city right now there is someone who because he will not be prosecuted will die one day in say the next ten years. We believe that Mr. Ammidown pleading to second degree murder—that the sentence in that case will neutralize him. We have no fear of him now. We are afraid of what Richard Anthony Lee might do.

Your Honor, we have one obligation. And that is the same obligation that your Honor has, and that is for the public. I prosecute for the Government—for the public—for the people of this city.

■ The trial judge was not free to disapprove this assessment by the prosecutor without both stating his reasons and determining that the prosecutor abused his discretion. Neither of these elements appears in the case at bar. The trial judge provided no statement of reasons, and such colloquy as appears indicates that the judge assumed that the correct test was what the judge independently considered best in the public interest.[17]

When we come to the possible ground of intrusion on the sentencing function of the trial judge, we have a consideration that is interdependent of the other. That is to say, a dropping of an offense that might be taken as an intrusion on the judicial function if it were not shown to be related to a prosecutorial purpose takes on an entirely different coloration if it is explained to the judge that there was a prosecutorial purpose, an insufficiency of evidence, a doubt as to the admissibility of certain evidence under exclusionary rules, a need for evidence to bring another felon to justice, or other similar consideration.

### III.

Because the trial judge did not provide a statement of reasons based on intrusion on the sentencing authority of the judge, it would be necessary to remand in any event. At the time the judge took the action appealed from, first degree murder was punishable by death, and second degree murder by a maximum of life imprisonment. We need not consider what kind of remand we might have provided if that kind of sentencing disparity were in effect at the present time. For the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), has established the unavailability of the death sentence for appellant. We are required to accompany our reversal for lack of requisite findings with a disposition in the interest of justice, see 28 U.S.C. § 2106, that takes into account current conditions. *See* Coleman v. United States, 123 U.S.App. D.C. 103, 357 F.2d 563 (*en banc* 1965).

■ The situation as it stands today is such that we cannot conceive that if the trial judge were required to provide a current reassessment of the problem in the light of the standards set forth in this opinion, he could justify his rejection of the first degree murder reversal and of the second degree murder plea as reflecting a sentence disparity so blatant as to constitute as intrusion upon the judicial domain. The life sentence is mandatory on a conviction for first degree murder, and discretionary with the court on a conviction for murder in the second degree. Parole is available after a minimum of 20 years in the case of first degree murder, and after a minimum of 15 years in the case of murder in the second degree. The difference is insufficient by itself to warrant judicial rejection of a properly bargained plea of guilty to murder in the second degree on the ground of undue interference with the sentencing domain of the judiciary.

Our duty as a court of appeals calls on us to reverse the action of the trial judge, but we think it only appropriate to accompany our action with an explicit statement that we are fully sensitive to

17. Tr. S–48–49.

his revulsion concerning this sordid crime. Appellant's own admissions establish that he took his wife out to dinner in the knowledge that she would soon be raped by his accomplice. And there was certainly evidence to support a jury verdict that appellant had also planned that she be murdered. If the decision were for the trial judge alone to make, his sentiment that the interest of justice called for trial on a charge of first degree murder would be conclusive. But our responsibility to apply the law calls on us to take into account both that a decision of the prosecutor was also involved and that substantial reasons undergirded his conclusion that the overriding public interest called for a certainty in the riddance of the hired gun.

For the reasons stated, the judgment and sentence on a conviction of murder in the first degree is vacated and the case remanded with instructions to accept appellant's plea of guilty to second degree murder.

So ordered.

### ORDER

On consideration of the petition for rehearing by the panel filed by *amicus curiae*, it is

·Ordered by the Court that the aforesaid petition for rehearing is denied.

### SUPPLEMENTAL OPINION

LEVENTHAL, Circuit Judge:

The amicus curiae appointed to represent the interest of the District Judge has, with leave of court, filed a *petition for reconsideration* to enlarge the perspective for considering whether the second degree murder plea may reflect a sentence disparity so blatant as to constitute an intrusion upon the judicial domain.

Our opinion focused on the reality of the record before this court, that the trial judge rejected the plea of guilty to second degree murder because he thought the defendant should be subject to capital punishment. At sentencing the trial judge expressed disappointment because the jury's recommendation of life imprisonment left him without authority to order the death sentence. (S. Tr. 4).

Amicus curiae puts it that the trial judge could rightly consider, in the exercise of his sentencing discretion, that the consecutive life sentences for premeditated murder (on the first count) and for felony murder (on the second count) resulted in a minimum term of 40 years (20 plus 20) before parole could be granted by the executive officials involved, as contrasted with 15 years for a single sentence on second degree murder.[1]

The argument of amicus is premised on the faulty proposition that consecutive sentences may be imposed upon convictions for premeditated murder and felony murder. In Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199 (1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969), we stated that although dual convictions were permissible, "a defendant committing a single homicide cannot be given consecutive sentences for both first degree murder and another crime of homicide." 132 U.S.App.D.C. at 289, 407 F.2d at 1224. Amicus asserts, however, that this holding was subsequently overridden by Congress in enacting 23 D.C.Code § 112, which provides:

A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another trans-

---

1. Amicus argues that the possibility of a longer minimum undercuts the premise, in our original opinion, that we could not anticipate that the trial judge, if required to provide a current reassessment, could balk at the second degree plea merely in order to assure a 20-year minimum before parole (on first degree murder) as contrasted with a 15-year minimum before parole (on second degree murder).

action, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

We conclude that premeditated murder and felony murder are not separate "offenses" within the meaning of 23 D.C. Code § 112. First degree murder is defined in 22 D.C.Code § 2401,[2] as purposeful killing, or killing in the course of commission or attempted commission of certain felonies. It is clear from the structure of section 2401 that rather than describing distinct offenses in one statute, this provision merely offers alternate definitions and modes of proof of the same offense. Our conclusion is fortified by the common law understanding of the law of homicide, from which the statute is taken.[3] At common law, murder was defined as killing accompanied by a given state of mind, most typically intention to cause death or intention to commit a felony.[4] Where there was but one killing, there was but one offense, and one act could therefore give rise to only one sentence,[5] despite the availability of alternate methods of demonstration of the requisite state of the actor's mind. The enactment in 23 D.C.Code § 112 of a general canon of construction, which presumes that multiple sentences for offenses run consecutively unless stated to be concurrent, was not intended to alter the substantive law of murder.[6]

Petition for rehearing denied.[7]

LEVENTHAL, Circuit Judge (concurring):

In accordance with a course I have followed on occasion,* I have written a separate concurring opinion notwithstanding that it was I who prepared the opinion for the court, because it contains comments not necessary for the judgment. Yet a concurring opinion that is not binding on the court may have utility in calling the attention of bench and bar to a legal approach that might have been developed in a case but was not, because such observations may help to focus on or clarify an area of the law that profits from reflection and attention. This prompted, for example, my concurring opinion United States v. (William) Dixon, 135 U.S.App.D.C. 401, 403, 419 F.2d 288, 290 (1969), which led, in due course, to a change in jury instructions in this circuit.

As to the present case, I think it may be helpful, in the event a legally similar

---

2. Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetating or in attempting to perpetate any arson, . . . rape, mayhem, robbery, or kidnapping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, is guilty of murder in the first degree.

3. Hamilton v. United States, 26 U.S.App.D.C. 382 (1905).

4. See Fuller v. United States, 132 U.S.App. D.C. 264, 293, 407 F.2d 1199 (1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed. 2d 125 (1969); Michael & Wechsler, A Rationale of the Law of Homicide, 37 Colum.L. Rev. 701–02 (1937); Arent & McDonald, The Felony Murder Doctrine and Its Application Under the New York Statutes, 20 Corn.L.Q. 288 (1935).

5. In this case the laws of man followed the dictates of the laws of nature, since the principal function of the distinction between first degree murder and other forms of homicide was that first degree murder was punishable by death. Michael & Wechsler, *supra* note 4, at 702.

6. The sentence in *Fuller* that premeditated murder and felony murder are separate "offenses" merely might better have read "charges," since the only issue was whether there could be separate counts and verdicts.

7. Appellant Ammidown asks that we remand for resentence by another judge. This is sometimes done when an appellate court finds an error that it identifies as likely to persist in any further action of the same judge. In the present case we think this is a matter for the sound judgment of the trial judge and chief judge of the District Court.

* United States v. Poole, 161 U.S.App.D.C. ——, 495 F.2d 115 (1974); Bellei v. Rusk, 296 F.Supp. 1247, 1252 (D.D.C.1969, 3-judge district court), reversed 401 U.S. 815, 91 S. Ct. 1060, 28 L.Ed.2d 499 (1971).

problem arises again, to point out that our holding that consecutive sentences for murder were unavailable to the trial judge does not mean that no other sentencing alternatives were at his disposal. In appropriate cases, the trial judge could explore the possibility of conditioning his acceptance of the guilty plea to second degree murder on the count charging premeditated murder, upon an additional plea, on the count charging felony murder, to the lesser included offense of the underlying felony, in this case rape. Whether such a course would be lawful and appropriate would depend on the implicating facts, and on the trial judge's reasons. In the case at bar, there was no attempt by the trial judge to explore any such alternatives. The proffered plea was simply rejected outright. Subsequent events—the results at trial, the conviction of the hired gun, and the decision in Furman v. Georgia—preclude any comprehensible attempt to reconstruct matters as they might have stood.