UNITED STATES of America

v.

Leslie M. JAMES, Defendant.

Crim. A. No. 94–258 (CRR).

United States District Court,
District of Columbia.

Aug. 25, 1994.

Robert A. De La Cruz, Asst. U.S. Atty., with Eric H. Holder, Jr., U.S. Atty., for the Government.

Michael C. Wallace, Sr., Asst. Federal Public Defender, with A.J. Kramer, Federal Public Defender, for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

This case is before the Court on the Defendant's Motion to Dismiss for a violation of the Speedy Trial Act and the Government's Opposition. Defendant Leslie M. James contends that the Government's delay of 18 months in bringing the Indictment against the Defendant violates the Speedy Trial Act's 30–day time limitation. The Government responds that the original Criminal Complaint before the United States Magistrate Judge of this Court against the Defendant has been dismissed, and that the present Grand Jury Indictment was brought within the time limits of the Speedy Trial Act. Because the Court finds that the Government's initial Criminal Complaint was not properly dismissed and that the present Indictment has therefore been brought substantially beyond the time limits of the Speedy Trial Act, the Court must grant the Defendant's Motion and dismiss this case, with prejudice.

## BACKGROUND

On October 16, 1992, the Government filed a Criminal Complaint against the Defendant in Cr. No. 92–776M, charging the Defendant with possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841. The affidavit which supported the Defendant's arrest warrant also alleged that the Defendant was in possession of firearms and a large sum of cash, but he was not charged with any weapons offenses. On November 18, 1992, the Defendant was arrested pursuant to the arrest warrant, and after entering an initial appearance, was ordered to be detained in a District of Columbia half-way house. On December 12, 1992, at the Defendant's preliminary hearing, the Defendant executed a 30–day waiver of the Speedy Trial Act, and United States Magistrate Judge Patrick J. Attridge ordered that 30 days not

be counted for Speedy Trial purposes in the time needed to secure an Indictment.

On January 19, 1993, the Government filed a pleading entitled "Dismissal," whereby the Government directed the Clerk of this Court to dismiss the Complaint against the Defendant without otherwise securing leave of the Court. *See* Def.'s Exh. 3, which is attached hereto and incorporated by reference herein. The pleading states in its entirety:

> The Clerk of said Court *will* enter a dismissal of the above-captioned case, and *will* order the release or discharge of the [Defendant], upon this request of the United States Attorney in and for the District of Columbia, Jay B. Stephens.

(emphasis added). Significantly, no motion was made to any Court to have the Criminal Complaint dismissed, and no Judge of this Court signed any Order doing so. The Defendant was released from third-party custody on that day.

More than a year later, on June 21, 1994, the Defendant was indicted by a Grand Jury in the above-captioned case for possession with intent to distribute crack cocaine, use of a firearm during a drug related offense, criminal forfeiture, and other firearm violations, and a bench warrant was issued for the Defendant's arrest. The Defendant was then arraigned before Magistrate Judge Patrick J. Attridge on June 30, 1994 and trial was scheduled for August 29, 1994.

No other pre-trial motions have been filed in this case, except this Motion to Dismiss.

## DISCUSSION

I. Prior to the enactment of the Speedy Trial Act of 1974, the Supreme Court had long held that a defendant accused of a crime had a constitutional right to a speedy trial which if abrogated would result in the dismissal of the case against such defendant with prejudice to its being refiled by the government at a later date.

The Sixth Amendment clearly states that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." A defendant's Sixth Amendment right to a speedy trial attaches "only when a criminal prosecution has begun and only to those persons who have been 'accused' in the course of that prosecution." *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971).

Traditionally, three tenets of the American criminal justice system were considered served by the Sixth Amendment right to a speedy trial: "[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966).

While the right to a speedy trial is clearly established in direct Constitutional language, prior to the enactment of the Speedy Trial Act, the length of delay in bringing an Indictment or Information which would abrogate a criminally accused defendant's speedy trial rights had never conclusively been determined. Indeed, while the Supreme Court had indicated that prolonged delays without justification were suspect, on the eve of the Speedy Trial Act's enactment, the courts determined whether a defendant's speedy trial rights were violated on a case-by-case basis taking into account the factors enunciated in *Ewell*.

While no specific time limit was established by the courts, the right to a speedy trial was "not a theoretical or abstract right but one rooted in hard reality on need to have charges promptly exposed." *Dickey v. Florida*, 398 U.S. 30, 37, 90 S.Ct. 1564, 1568, 26 L.Ed.2d 26 (1970). The right "is fundamental and the duty of the charging authority is to provide a prompt trial." *Id.* at 38, 90 S.Ct. at 1569. Of course, some delays are inherent in the judicial system as a result of crowded dockets, a lack of judges or lawyers, or other factors. *Id.* However, the Government could not before enactment of the Speedy Trial Act and may not now unjustifiably postpone bringing an Indictment even if the accused has been released from custody. *Klopfer v. State of North Carolina*, 386 U.S. 213, 214, 87 S.Ct. 988, 989, 18 L.Ed.2d 1 (1967).

II. The "plain meaning" of the Speedy Trial Act of 1974 dictates that the Government's prosecution of the Defendant, one and a half years after the Defendant was originally indicted, is substantially out of time and, therefore, the Government's case against the Defendant must be dismissed.

In 1974, Congress passed the Speedy Trial Act to fix a definite time after which, if it had not brought its Indictment against an accused criminal defendant, the Government would violate the defendant's speedy trial rights. 18 U.S.C. § 3161. The statute states:

(d)(1) If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against such individuals is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

Subsection (d) is not applicable to the fact situation of this case. However, Subsection (b) states:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

In construing the effect of the foregoing statutory language, the Court need go no further than applying the "plain meaning" rule. Where courts are attempting to construct the meaning of a statute, the Supreme Court has said that "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). The Supreme Court continued, saying that "[w]here the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion." *Id.*

The applicable language of the Speedy Trial Act admits of no more than one meaning. Because the Government does not provide an alternative reading of the Speedy Trial Act,[1] and because the statutory language is plain, the Court finds that the Speedy Trial Act prevents the Government from delaying over one and a half years before bringing an Indictment where there is a Criminal Complaint pending. *See Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning"); *Consumers Union of U.S., Inc. v. Federal Trade Commission,* 801 F.2d 417, 421 (asserting that the plain meaning of the text of the Federal Trade Act should not be limited by bits of legislative history); *National Black Media Coalition v. Federal Communications Commission,* 760 F.2d 1297, 1299 (D.C.Cir.1985) ("We cannot disregard the plain meaning" of certain provisions of the Federal Rules of Appellate Procedure and statutory requirements regarding appeals). According to 18 U.S.C. § 3161(b), any Indictment must be filed within 30 days of a suspect's initial arrest.

In this instance, although plain English, common sense, and even Congressional intent tell us that there is no need to look past the clear language of the statute, *see United States v. Rabb,* 680 F.2d 294, 296 (3rd Cir. 1982) ("To discern Congress' intent in § 3161(b), we begin with the language of the statute itself because we presume that the words Congress has chosen best reflect the legislative purpose."), *cert. denied,* 459 U.S.

---

**1.** The Government's Opposition focuses almost exclusively on interpreting Rule 48 of the Federal Rules of Criminal Procedure.

873, 103 S.Ct. 162, 74 L.Ed.2d 135,[2] even if the Court were to go beyond the plain meaning of the Speedy Trial Act, the conclusion herein is consistent with the legislative history of the Congress. "The legislative history of § 3161(b) reveals that its purpose was to accelerate the indictment phase of criminal proceedings, which at times did not occur until months after arrest." *Id.* Here, this purpose was clearly violated; there was no acceleration of the criminal proceedings, as the Government apparently attempted to use the threat of a new, multi-count Indictment as leverage to induce the Defendant to cooperate.

III. Because the United States Attorney never filed a Dismissal of the original Criminal Complaint "by leave of court," as required under Rule 48(a) of the Federal Rules of Criminal Procedure, the Government's filing of a "Dismissal" with the Clerk, without judicial approval or action, on January 19, 1993, does not toll the Speedy Trial Act, or enable the Government to proceed to an Indictment one and a half years later.

Any dismissal of an Indictment sought by an attorney for the government must comply with Rule 48(a) of the Federal Rules of Criminal Procedure, which states:

Rule 48. Dismissal

(a) By Attorney for Government. The Attorney General or the United States attorney may *by leave of court* file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without consent of the defendant.

(emphasis added). In light of the language of this rule, its purpose and function in criminal procedure, the importance of the judicial role as a guardian of a defendant's rights, and past precedent, the Court finds that the original Criminal Complaint against the Defendant was never dismissed, and that the

Speedy Trial Act mandates the dismissal of all charges pending against him.

As the language of Rule 48(a) clearly states, the Government may not dismiss a complaint on its own. Prior to the enactment of Rule 48(a), "the common-law rule that the public prosecutor may enter a nolle prosequi in his discretion without any action by the court, prevail[ed] in the Federal courts." Fed.R.Crim.Pro. 48 advisory committee's note. However, after the passage of Rule 48(a), the filing of nolle prosequi became permitted "only by leave of the Court." *Id.* In this case it is not disputed that the United States Attorney's Office acted without Court approval in dismissing the Complaint herein.

Seeking to go to trial on the Indictment of June 21, 1994, the Government argues that its notice of "Dismissal" was valid and legitimate. According to the Government's Opposition, the "Defendant blithely ignores [Rule 48], and seemingly argues that the executive branch of government, the branch of government constitutionally vested with both the power to prosecute and the decision-making authority whether to prosecute, now somehow lacks the authority to exercise prosecutorial discretion and terminate a prosecution." Def.'s Opp. at 3. In addition, the Government argues that voiding the "Dismissal" filed by the AUSA would be "specious because it is premised upon the notion that only the judicial branch has the power to dismiss a case. As is now clear, the executive branch has some authority in this realm." *Id.* at 4.

In attacking the logical application of this Rule to the case at hand, the Government overstates its own discretion and mischaracterizes what happened in this case. The Office of the United States Attorney clearly has more than "some authority" and considerable discretion to bring Indictments and to seek leave of court to dismiss criminal complaints, and Rule 48 does not interfere with that discretion. However, this broad discretion is not boundless, and as the Government recognizes, the executive's authority is not

**2.** Much of the legislative history of the Speedy Trial Act does not lend itself to straightforward statutory construction. *See United States v. Pe-*

*tak,* 623 F.Supp. 74, 76 (S.D.Texas 1985) (stating that "§ 3161(d)(1) is not a model of legislative clarity").

absolute. A prosecutor's discretion does not include the circumvention of the Federal Rules of Criminal Procedure, in which the Government bypasses judicial approval of a request for a dismissal either for the sake of expediency or for good-faith error. Moreover, the Government has not, and cannot, provide any support for its assertion that it may independently and unilaterally drop charges at will and without an explanation for the record.

As considerable precedent has emphasized, the only protection against the abuse of prosecutorial discretion lies with the Court. The Government's own citation of Supreme Court precedent supports the Defendant's position that "leave of court" provides the judiciary with an essential check on potential misconduct by the executive branch:

> The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.,* charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.

*Rinaldi v. United States,* 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 85 n. 15, 54 L.Ed.2d 207 (1977) (per curiam); *see also United States v. Ammidown,* 497 F.2d 615, 620 (D.C.Cir.1974) (stating that federal courts have discerned that the primary concern of this Rule was "that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution").[3] In this case, the Government's filing represents an unwarranted intrusion into the judiciary's role of protecting criminal defendants against such prosecutorial abuse. Unlike the circumstances in *Rinaldi,* the Government's failure to file a motion to dismiss denied the Defen-

dant his right to have the Court rule on his objection to dismissal. There was no opportunity to oppose or object to the dismissal, and no independent audience to assess the legitimacy and fairness of dropping the charges at that time.

Despite the importance of judicial monitoring of prosecutorial conduct, the Government contends that under the particular facts of this case—the Defendant allegedly agreed to cooperate, and then allegedly reneged on his commitment[4]—indicates the validity of its "Dismissal." However, such an argument is contrary to the position of the D.C. Circuit, which stated that in protecting the public interest, "we do not think Rule 48(a) intends the trial court to serve merely as a rubber stamp for the prosecutor's decision." *Ammidown,* 497 F.2d at 622. No matter how persuasive the Government's arguments may be in seeking dismissal, neither the trial court nor any appellate court would ever have a way of knowing where the prosecutor neglects to create a record of these reasons. "Thus, to honor the purpose of the rule, the trial court at the very least must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision." *United States v. Derr,* 726 F.2d 617, 619 (10th Cir.1984) (citations omitted). Accordingly, the Government should move for leave of court to file a dismissal when it wishes to dismiss a complaint, and raise any arguments supporting dismissal at that time.

Moreover, as other Circuits have construed Rule 48, that Rule is "intended to allow the courts to consider the 'public interest, fair administration of criminal justice and preservation of judicial integrity.'" *U.S. v. Strayer,* 846 F.2d 1262, 1265 (10th Cir.1988) (citations omitted). To advance these broader goals, a district court may act where a prose-

---

**3.** Similarly, the Ninth Circuit requires judicial review of every charge bargain. "To assure that judicial discretion is exercised with due regard for prosecutorial independence, we hold that courts must review individually every charge bargain placed before them. They must set forth, on the record, both the prosecutor's reasons for framing the bargain as he did and the court's justification for rejecting the bargain." *See United States v. Miller,* 722 F.2d 562, 566 (9th Cir.1983).

**4.** The "Dismissal" provides no indication that the Defendant promised to cooperate or do anything else. In fact, the Government's Opposition provides no Affidavits or documentation of what occurred, and merely provides a post hoc explanation of why it sought to dismiss the Criminal Complaint in January, 1993.

cutor acts in bad faith, or where the prosecution's motion "is prompted by considerations clearly contrary to the public interest." Once again, not only did the Government's improper filing prevent the Court from protecting against prosecutorial harassment, but it also undercuts the Court's broader responsibility of overseeing the entire criminal justice system and acting in the public interest. The Government should not be able to insulate itself from review by a district court (which, in turn, precludes appellate review), nor should it deny a district court which may wish to protect the public from a dangerous individual or otherwise advance the public interest.

In attempting to rebut this argument, the Government's reliance on the cases cited in its Opposition is misplaced. For example, the Government points to *United States v. Welborn,* 849 F.2d 980, 983 (5th Cir.1988) (quoting *United States v. Salinas,* 693 F.2d 348, 351 (5th Cir.1982)), for the proposition that "the government is entitled to presumption that it acted in good faith when it dismisses a case pursuant to Rule 48(a)." Def.'s Opp. at 5. In citing these cases this way, the Government is inaccurate and even misleading. According to *Welborn,* "[w]hen a court considers a prosecutor's motion to dismiss it must begin with the presumption that the prosecutor acted in good faith." *Welborn,* 849 F.2d at 983 (quoting *Salinas,* 693 F.2d at 351 & n. 5); *see also Rinaldi,* 434 U.S. at 30, 98 S.Ct. at 85–86. The critical distinction here is that *Welborn* and *Salinas* address the Court's consideration of a motion to dismiss, a motion which is conspicuously absent in this case. The Government demands a presumption of good faith when "it dismisses a case," but in seeking such a presumption, the Government improperly assumes the posture of a prosecutor whose motion for dismissal had been denied, or who otherwise filed a dismissal after obtaining a court's permission to do so.

Furthermore, both *Welborn* and *Salinas* recognize the prosecutor's obligation to ex-plain that dismissal would be in the public interest. *Welborn,* 849 F.2d at 983; *Salinas,* 693 F.2d at 352. Thus, even under the cases cited by the Government, and even if the "Dismissal" were a motion, the pleading filed by the Government fails to explain its basis to the Court or the Defendant, and is therefore deficient.

Therefore, because the Government offers no reason for tolling the Speedy Trial Act, and because the prosecutor did not file an Indictment within 30 days of the preliminary hearing before Magistrate Judge Attridge, that Act mandates the dismissal of this case. *See* 18 U.S.C. § 3161(b). Here, the 30–day limit was exceeded by well over a year and a half, and because there is no justification for this delay, the Court must dismiss the Indictment as well.

■ The remaining question before this Court is whether to dismiss this case with or without prejudice.[5] In guiding the Court in making this determination, the Speedy Trial Act specifies the consideration of the following factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Although even the Defendant recognizes the gravity of the offenses with which he is charged, the Court finds that the broader reaching circumstances in this case support a dismissal with prejudice. With regard to its essential function in administering justice in the criminal system, this Court cannot condone the Government's failure to recognize and follow the requirements of the Federal Rules of Criminal Procedure. In light of the sizeable discretion at the Government's disposal, and the important public policy of the judiciary's responsibility to protect a defendant's right to speedy trial and to allow the accused to have the fullest opportunity to respond to any changes in his or her Indictment status, the Court shall dismiss this case, with prejudice.

5. The Court notes that, to the extent that the legislative history of this statute is relevant, "[t]he thrust of the compromise [in the House of Representatives] was that the decision to dismiss with or without prejudice was left to the guided discretion of the district court, and that neither remedy was given priority." *United States v. Taylor,* 487 U.S. 326, 335, 108 S.Ct. 2413, 2418, 101 L.Ed.2d 297 (1988).

*CONCLUSION*

For all the reasons previously stated, the Court shall grant the Defendant's Motion to Dismiss, with prejudice. The Court finds that the Government failed to follow the requirements of the Speedy Trial Act and Rule 48 of the Federal Rules of Criminal Procedure.